

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00358-CV

_____

In the Interest of I.B., Jr., a Child

_____

On Appeal from the 324th District Court
Tarrant County, Texas
Trial Court No. 324-690890-20

_____

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

## I.  INTRODUCTION

After a bench trial, the trial court terminated Mother's parental rights to her son, I.B.[1]  Mother appeals that decision, raising seven points of error: (1) the trial court abused its discretion in denying Mother's motion for continuance; (2) the evidence is factually insufficient to support the finding that Mother placed or allowed I.B. to remain in conditions that endangered the physical or emotional well-being of I.B.; (3) the evidence is factually insufficient to support the finding that Mother engaged in conduct that endangered the physical and emotional well-being of I.B., (4) the evidence is factually insufficient to support the finding that Mother constructively abandoned I.B.; (5) the evidence is factually insufficient to support the finding that Mother failed to complete court-ordered services for the return of I.B.; (6) the evidence is factually insufficient to support the finding that Mother failed to complete a court-ordered substance abuse treatment program; and (7) the evidence is factually insufficient to support the finding that terminating Mother's parental rights was in the best interest of I.B.

We overrule Mother's challenge to the trial court's decision to deny her motion for continuance.  Because we hold that the evidence is factually sufficient to support the trial court's finding that Mother engaged in conduct or knowingly placed I.B. with

---

[1] We use an alias for the child throughout this opinion.  *See* Tex. R. App. P. 9.8(b)(2).

persons who engaged in conduct that physically or emotionally endangered I.B., we overrule Mother's third point. Having overruled Mother's third point, addressing her second, fourth, fifth, and sixth points is not necessary. Finally, we overrule Mother's last issue because factually sufficient evidence supports the trial court's finding that termination was in I.B.'s best interest. Therefore, we affirm the trial court's judgment.

## II. BACKGROUND

Elizabeth Pratt, a supervising investigator for Child Protective Services (CPS) testified at trial. Mother gave birth to I.B. in October 2020. The initial intake to CPS was because I.B. was born showing signs of drug withdrawal. He tested positive for the presence of amphetamines and heroin, and he was infected with a sexually transmitted disease.

CPS made efforts to prevent removal. I.B.'s maternal grandmother was considered, but was ultimately rejected for placement. The child also had a step-grandmother who had originally volunteered to be considered for placement, but she changed her mind. In addition, the investigator was unable to locate I.B.'s father. CPS removed I.B. from the hospital in early November 2020 when his discharge was approved.

CPS had previously removed three children from Mother's care. All three had been "affected by drug use"—either being born addicted to drugs or screening positive in drug tests. One of the children was removed because of "serious bodily injury with skull fractures." The investigator was also concerned about Mother's

3

extensive criminal history. Mostly, she had theft and drug charges dating back to 2004. Mother, in fact, was arrested during the investigation into I.B.'s condition. She was in jail during the investigation and the child's subsequent removal.

Anais Montgomery was Mother's caseworker. Among Montgomery's concerns were I.B.'s safety, Mother's continued drug use, her incarceration, and her long history of criminal activity. She gave Mother a service plan which included substance abuse assessment and treatment, individual counseling for drug addiction, a psychological evaluation and individual psychiatric counseling, parenting classes, random drug testing, and an obligation to acquire and retain stable housing and employment. Mother agreed to work these services, and they were made an order of the trial court.

Mother testified. She was thirty-three years old at the time of trial. In and out of prison due to drug addiction, she had begun using heroin at age nineteen. Mother admitted to using heroin daily during her pregnancy with I.B. This use was not limited to her latest pregnancy—she admitted to having been addicted to heroin during four to six months of her pregnancy in 2007, including giving birth while on the drug. As Mother acknowledged, this was a "pretty serious" addiction.

Mother went to prison in October 2020 and stayed there until August 2021, about three months before trial. She had, therefore, no contact or visitation with I.B. after he was born. Mother was released to a halfway house in Odessa. Two weeks prior to trial, Mother moved out of that halfway house and into a home in San Angelo shared by her own mother and her mother's husband. During her stint in the halfway

4

house, Mother was drug tested about eight times, all with negative results. In addition, she received one drug test (negative result) after she moved in with her mother. She had begun a twelve-step program about four days before trial, but she had not yet come up with a relapse prevention plan. After Mother moved to San Angelo, her caseworker tried to set up a psychological evaluation and parenting classes with Mother, but Mother did not engage with the plan or call any of the provided telephone numbers. Mother also testified that, at the time of trial, she was employed full-time at a meat processing plant. However, she did not provide proof of her employment to her caseworker, as mandated by the court-ordered service plan.

## III. THE DENIAL OF MOTHER'S REQUEST FOR A CONTINUANCE WAS NOT AN ABUSE OF DISCRETION

In her first point of error, Mother contends that the trial court abused its discretion in denying her motion to continue her trial.[2]

Mother was the only witness regarding her motion for continuance. She testified that she went to jail on a theft charge in October of 2020, following the birth of I.B. From the hospital, I.B. was subsequently removed into the Department's care, Mother went to trial on the theft charge, and she was sentenced to prison the following month. After nine months, she was released on parole. Mother was then confined to a halfway house in Odessa until October 9, 2021.

---

[2] At trial, Mother sought both an extension of the dismissal deadline and a continuance of her trial. On appeal, Mother limits her complaint to the trial court's denial of her continuance motion.

Mother testified that, while in prison, she tried to take parenting classes as part of her court-ordered services, but the COVID outbreak prevented her from completing anything. At the halfway house, she was able to complete a cognitive skills class, AA, and NA. During these months, Mother was able to correspond both with her caseworker and her attorney. During cross-examination, Mother admitted that it was her own fault she was confined, that she would have been able to "work services" had she not been confined, and, therefore, her being unable to complete the services was due to her own actions.

A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or by operation of law. Tex. R. Civ. P. 251. If a party's motion for continuance is not made in writing and verified, then we will presume the trial court did not abuse its discretion. *Ohlhausen v. Thompson*, 704 S.W.2d 434, 436 (Tex. App.—Houston [14th Dist.] 1986, no writ). Here, the record does not contain a written motion or an affidavit. Therefore, Mother did not comply with Rule 251, and the trial court could not have abused its discretion in denying the oral motion for continuance. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).

Even if there had been a proper written and verified motion for continuance, Mother could still not show an abuse of discretion. A trial court may grant a 180-day extension of the dismissal deadline in a suit filed by the department to terminate a parent-child relationship on a showing that "extraordinary circumstances necessitate

6

the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." Tex. Fam. Code Ann. § 263.401(b). The focus when analyzing if a trial court abused its discretion in denying an extension should be on the needs of the child, whether extraordinary circumstances demand that the child remain in the department's care, and whether continuing that care is in the best interest of the child. *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied).

Mother explained to the trial court that her confinement in prison was the main reason she was unable to complete her services. This circumstance, by her admission, was her own fault. "Actions that are considered to be the parent's fault will generally not constitute extraordinary circumstances." *In re J.S.S.*, No. 10-19-00102-CV, 2019 WL 4511483, at *3 (Tex. App.—Waco Sept. 18, 2019, pet. denied) (mem. op.). "Generally, parents cannot blunder their way into extraordinary circumstances." *In re C.G.*, No. 02-20-00087-CV, 2020 WL 4518590, at *3 (Tex. App.—Fort Worth Aug. 6, 2020, pet. denied) (mem. op.). The trial court did not, therefore, abuse its discretion in rejecting Mother's incarceration-based argument. *See In re K.P.*, No. 02-09-00028-CV, 2009 WL 2462564, at *4 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.) (holding that when a parent "through his or her own choices" fails to comply with a service plan, a trial court does not abuse its discretion in refusing to grant an extension). The same holds true with respect to Mother's argument that the COVID

7

pandemic also prevented her from complying with services while she was in prison. Even if COVID interfered with her ability to complete services while in prison, Mother ultimately blames her incarceration—an incarceration which resulted from her own actions.

Moreover, as the Family Code makes clear, the focus in granting or refusing to grant an extension should be on what serves the best interest of the child. Mother, by contrast, failed to explain to the trial court how an extension would benefit I.B. and instead focused on the fact that she was incarcerated and that the COVID pandemic prevented her from completing services. Mother's reasons for extending the dismissal deadline were unrelated to what was in I.B.'s best interest and underscores why granting an extension was not justified. *See In re M.S.*, 602 S.W.3d 676, 679–80 (Tex. App.—Texarkana 2020, no pet.). We overrule Mother's first point.

## IV. FACTUAL SUFFICIENCY OF ENDANGERMENT

In her second and third points of error, Mother claims that there was factually insufficient evidence to support the trial court's findings of endangerment under Sections 161.001(b)(1)(D) and (E) of the Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). We disagree with Mother.

### A. FACTUAL SUFFICIENCY STANDARD OF REVIEW

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence: 1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and 2) that

termination is in the child's best interest.  Tex. Fam. Code Ann. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

In evaluating the evidence's factual sufficiency to support termination, we must perform "an exacting review of the entire record."  *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014).  Nevertheless, we give due deference to the factfinder's findings and do not supplant the judgment with our own.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the Department proved the termination grounds.  Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).  If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient.  *C.H.*, 89 S.W.3d at 18–19.

## B.  ENDANGERMENT UNDER SUBSECTION (E)

The trial court granted the termination in part on the grounds listed in Subsections (D) and (E) of Section 161.001(b)(1).  If a trial court's termination is based on (D) or (E), an appellate court must review one of those grounds (or both if neither withstands appellate review) when raised on appeal—even if other grounds would support termination—because a termination on either of those grounds has collateral consequences for the parent's relationship with other children the parent

may have in the future. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M) (providing that a prior termination under (D) or (E) is a ground for terminating parental rights to a different child); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("[I]f a court of appeals affirms the termination on either [(D) or (E)] grounds, it must provide the details of its analysis."); *In re T.C.*, No. 02-19-00291-CV, 2019 WL 6606172, at *1 n.3 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.) ("We read *N.G.* to say that an affirmance under either (D) or (E) suffices because under (M) an affirmance under one makes the other moot."). Accordingly, we begin with ground (E).

The endangerment ground permits termination (assuming termination is in the child's best interest) when the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Endanger" in this context means "to expose to loss or injury, to jeopardize." *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) and *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)).

The relevant inquiry under (E) is "whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act." *M.B.*, 2015 WL 4380868, at *12. Termination under Subsection (E) must be based on more than a single act or

omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *J.T.G.*, 121 S.W.3d at 125. However, the parent's conduct need not be directed at the child or actually cause the child injury; "[t]he specific danger to the child's well-being may be inferred from parental misconduct standing alone." *M.B.*, 2015 WL 4380868, at *12. Courts may consider a parent's conduct that occurred outside the child's presence or after the child's removal by the Department. *In re M.S.*, No. 02-20-00147-CV, 2020 WL 6066400, at *4 (Tex. App.—Fort Worth Oct. 15, 2020, no pet.) (mem. op.). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *M.B.*, 2015 WL 4380868, at *12.

A trial court may consider a parent's failure to complete a service plan as part of its endangering-conduct analysis. *Id.* (citing *In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.)). Further, "[d]rug abuse during pregnancy constitutes conduct that endangers a child's physical and emotional well-being." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). Although an endangerment finding based on drug use alone is not automatic, *In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied), the fact that a mother uses illegal drugs while pregnant obviously tends to show that a mother has embarked on a course of conduct that endangers the well-being of her child, *see In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.). Evidence of improved conduct, especially of short duration, does not conclusively negate the probative value

of a long history of drug use and irresponsible choices. *In re S.L.-E.A.*, No. 02-12-00482-CV, 2013 WL 1149512, at *8 (Tex. App.—Fort Worth Mar. 21, 2013, pet. denied) (mem. op.).

A parent's criminal history—whether it entails conduct, convictions, or imprisonment—is relevant to the question of whether she engaged in an endangering course of conduct. *In re S.R.*, 452 S.W.3d 351, 360–61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.). Routinely subjecting a child to the probability that the child will be left alone because a parent is in jail endangers the child's physical and emotional well-being. *See S.L.-E.A.*, 2013 WL 1149512, at *8; *In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.).

Finally, a trial court may consider in its analysis a parent's failure to visit, which can endanger the child's emotional well-being. *In re M.K.*, No. 02-19-00459-CV, 2020 WL 1949629, at *6 (Tex. App.—Fort Worth Apr. 23, 2020, no pet.) (mem. op.); *M.B.*, 2015 WL 4380868, at *12.

Mother's history of drug use is the defining aspect characterizing her endangering behavior toward I.B. Mother had been using heroin since age nineteen. At the time of trial, that amounted to fourteen years of using drugs like methamphetamine and heroin. More disturbing, Mother admitted to using heroin "daily" during her pregnancy (and during an earlier pregnancy in 2007) and

understood that such use was a danger to the health and safety of her child. *See In re J.M.*, No. 2-08-00259-CV, 2009 WL 112679, at *5 (Tex. App.—Fort Worth Jan. 15, 2009, no pet.) (mem. op.) (finding factually sufficient evidence of endangerment where mother admitted using cocaine while pregnant). While it is true that Mother had been incarcerated since not long after the birth of I.B. and had therefore probably not used drugs during the period of removal, her lack of a relapse prevention plan could have justified a conclusion that her incarceration-sobriety would pale in contrast to her fourteen-year addiction. *See id.* (despite mother's testimony that she had been drug-free for a month, trial court could have reasonably believed that she would continue to use cocaine).

Additionally, imprisonment alone may not constitute an endangering course of conduct, but it is a fact properly considered on the endangerment issue. *Boyd*, 727 S.W.2d at 533–34. Mother has an extensive criminal history, including drug and theft charges extending back to 2004. This history included convictions in Tarrant County for possession of heroin in 2008 and 2017 in addition to the theft conviction for which she was in prison during the pendency of her case.

Mother argues on appeal that there was no unsupervised access during the pendency of the case "during which time she would have endangered the child." As we recently stated in a case with similar facts, such unsupervised access is hardly necessary to establish a violation of Subsection (E), and, in any event, "a parent's continuing course of conduct can include conduct outside the child's presence,

13

conduct before and after the child's removal from the parent's care, and even conduct taking place before the child's birth." *In re E.C.*, No. 02-20-00022-CV, 2020 WL 2071755, at *7 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (mem. op.).

Finally, we may consider Mother's failure to complete a service plan as part of an endangerment analysis under subsection 161.001(b)(1)(E). *In re K.S.*, No. 02-18-00191-CV, 2018 WL 4659120, at *3 (Tex. App.—Fort Worth Sept. 28, 2018, no pet.). It is undisputed that Mother had a copy of the original service plan by the time it was made an order of the court in December of 2020. Although Mother took some classes while she was incarcerated, she did not do anything after her release other than participate in Narcotics Anonymous. After Mother's release from prison, she was confined to a halfway house in Odessa and was therefore unable to complete any services from there. When Mother moved to San Angelo, her caseworker arranged for her to participate in a psychological evaluation and classes over Zoom. However, Mother failed to engage in any of those services.

We hold that the evidence, viewed with the appropriate deference, was factually sufficient for the factfinder to reasonably form a firm conviction or belief that Mother had engaged in conduct or had knowingly placed I.B. with persons who had engaged in conduct that endangered his physical or emotional well-being. We overrule Mother's third issue.

14

Because we have affirmed the sufficiency of the evidence to support the (E) ground, we need not address the (D) ground. *See In re E.C.*, 2020 WL 2071755, at *5. We therefore do not address Mother's second issue.

## V. MOTHER'S FOURTH, FIFTH, AND SIXTH ISSUES ARE MOOT

In her fourth, fifth, and sixth issues, Mother claims that the evidence is factually insufficient to justify the trial court's termination of her parental rights under Subsections (N) (constructive abandonment), (O) (failing to complete service plan), and (P) (failing to complete substance abuse program) of Family Code Section 161.001(b)(1). Because we held the evidence to be factually sufficient under Subsection (E), we will not address Mother's challenges to the other grounds for termination found by the trial court. *See In re D.D.G.*, 423 S.W.3d 468, 475 (Tex. App.—Fort Worth 2014, no pet.).

## VI. BEST INTEREST

In Mother's seventh point of error, she attacks the factual sufficiency of the evidence supporting the trial court's finding that termination was in I.B.'s best interest.

### A. LAW

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In determining whether evidence is

sufficient to support a best interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *Id.* at 249; *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

- the child's desires;

- the child's emotional and physical needs now and in the future;

- the emotional and physical danger to the child now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist these individuals to promote the child's best interest;

- the plans for the child by these individuals or by the agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors do not form an exhaustive list, and some factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27.

16

Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not support such a finding. *Id.*; *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *4 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.).

## B. DISCUSSION

### 1. Child's Desires

I.B. was just over one year old at the time of trial. As such, he was nonverbal and unable to express any opinion regarding the case and his mother.

Because there was no evidence of I.B.'s desires, this factor is neutral. *See In re X.R.L.*, 461 S.W.3d 633, 640 (Tex. App.—Texarkana 2015, no pet.) ("[T]he first *Holley* factor is neutral because no evidence of the children's desires was presented.").

### 2. Child's Emotional and Physical Needs and Danger to the Child Now and in the Future

Children need long-term safety and stability. *See* Tex. Fam. Code Ann. § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *In re M.A.J.*, 612 S.W.3d 398, 411 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (op. on reh'g); *A.C. v. Tex. Dep't of Fam. & Protective Servs.*, 577 S.W.3d 689, 705–06 (Tex. App.—Austin 2019, pet. denied). Mother posed a danger to I.B. because of her long-term drug use.

17

As already discussed, Mother admitted to using cocaine and heroin since she was nineteen. This drug use continued during her pregnancies, including while she was pregnant with I.B. From a parent's past misconduct, a factfinder may infer a parent's future conduct. *See A.S.*, 394 S.W.3d at 714 ("[E]vidence of past misconduct or neglect is permissible as an inference that a parent's future conduct may be measured by their past conduct."). This is particularly true in Mother's case as her lack of a relapse prevention plan could have led the trial court to reasonably believe that her recent sobriety was only temporary. Indeed, Mother admitted as much when she testified that she had quit heroin more than ten times in the past and that her incarceration had resulted in a kind of "forced sobriety."

Thus, the factfinder could have formed a firm belief that Mother's past drug use could affect I.B.'s emotional and physical needs now and in the future and even constitute an emotional and physical danger to him.

### 3. Parental Abilities and Plans for the Child of the Individuals Seeking Custody

I.B.'s foster parents plan to adopt him. I.B. has bonded well with his foster parents as well as with the other children in their home. He has begun learning to walk, he has been eating well, and his doctor believes that I.B. has thrived in foster care. This represents a substantial change from when I.B. came into care—he was born premature and was showing signs of drug withdrawal and STD exposure. I.B.'s foster parents have taken advantage of Early Childhood Intervention (ECI) in order

18

to help remedy some of his developmental delays. They are ready to provide any therapies he may need, such as feeding, speech, or occupational therapy. The foster parents have generally been attending to I.B.'s needs, including making sure that he gets to doctor's appointments and his various therapies. In the opinion of I.B.'s caseworker, the foster parents are able to meet I.B.'s physical, emotional, and financial needs now and in the future. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (stating that stability and permanence are important to upbringing of a child and affirming finding that termination was in child's best interest when child was thriving in foster care).

By contrast, there was no evidence of any bonding between Mother and I.B. Mother has neither seen nor visited I.B. since he was born. Even immediately after I.B.'s birth, Mother's contact with him was limited due to his receiving treatment in the neonatal intensive care unit. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 312 (Tex. App.—El Paso 2009, pet. denied) (holding that mere "lackluster efforts" to visit child supported finding that termination was in child's best interest).

This factor supports the trial court's finding.

### 4. Programs Available to Assist These Individuals to Promote the Child's Best Interest

I.B. receives regular therapy through ECI to make sure that he reaches his developmental goals. Continuing with ECI will ensure that I.B. receives any help he

needs including feeding, speech, and occupational therapy. In addition, ECI will continue to receive Medicaid benefits to make sure he gets any necessary support in the future.

Mother, by contrast, has not completed any court-ordered services or parenting classes except for Narcotics Anonymous. Even if programs were available to Mother, a reasonable factfinder could doubt Mother's willingness to access them and follow through. The trial court was entitled to find that this factor weighed in favor of terminating Mother's parental rights.

### 5. Stability of the Home or Proposed Placement

Mother was in prison for most of I.B.'s short life. She was released on parole a few months before the final hearing. Mother then spent some time in a halfway house, followed by a move into her own mother's home in San Angelo. Her current home cannot be regarded as a potential placement—the grandmother has "CPS history" which has ruled her out. Mother's life outside of her home also does not appear particularly stable. She testified that she has been working at a meat processing plant. However, when requested, Mother failed to provide proof of this employment to her caseworker. In any event, as Mother had only started this job about a week before trial, there was no way she could have demonstrated an ability to provide I.B. with a safe and stable environment.

I.B. is currently in a stable, adoption-motivated foster home. He is doing well in that placement and has bonded with both his foster parents and the other children

in the home, the home is safe and appropriate, and they are able to meet I.B.'s medical needs.

This factor supports the trial court's best-interest finding.

### 6. Parent's Acts or Omissions that May Indicate that the Existing Parent–Child Relationship is Not a Proper One and Parent's Excuse, if Any, for the Acts or Omissions

Mother did not dispute her history of drug abuse, criminal activity, and incarceration. Mother had previously had three other children removed from her care, all of them testing positive for drugs at birth and one having suffered a skull fracture. Montgomery, the caseworker, testified that if I.B. were returned to his mother, she was concerned about Mother's ability to provide for the child because Mother did not have stable employment. Further, Mother had not taken substantial steps to prevent future drug addiction. It was Montgomery's opinion, therefore, that allowing I.B. to go home with Mother would not be in the child's best interest.

Mother claimed at trial that she would be able to bond with I.B. and parent him safely. There was, however, no evidence of bonding—Mother had not seen I.B. since he was born. Further, given Mother's extensive history of drug addiction, her scant four days in a recovery program, and her lack of a relapse plan, the trial court was justified in disbelieving that Mother's home would be a safe environment for the child.

This factor supports the trial court's best-interest finding.

21

### 7.  Analysis and Holding

The Department removed I.B. from a drug-addled, unstable environment. Mother did little to address the problems that led to her child's removal. By contrast, I.B. is in an adoption-motivated foster home where he has bonded and receives all the care he needs.

We hold that the evidence is factually sufficient to show that terminating Mother's parental rights was in the best interest of I.B.  *See C.H.*, 89 S.W.3d at 25 (stating that to be factually sufficient, based on the entire record, the court must conclude that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations).

We overrule Mother's seventh issue.

## VII.  CONCLUSION

Having overruled the relevant issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  April 28, 2022